391 So.2d 366 (1980)
M. M., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. TT-344.
District Court of Appeal of Florida, First District.
December 19, 1980.
*367 Michael J. Minerva, Public Defender, Carl S. McGinnes, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
MILLS, Chief Judge.
A juvenile, M.M., appeals from an adjudication of delinquency for aggravated assault, urging three points on appeal:
I. The trial court erred in denying appellant's motions to dismiss and for judgment of acquittal since the starter gun involved sub judice is not a deadly weapon within the meaning of the aggravated assault statute.
II. The trial court erred by denying appellant's motion to suppress evidence and motion to suppress confession since the officer who arrested appellant failed to make a reasonable effort to immediately notify appellant's mother of the arrest.
III. The trial court erred in denying appellant's motions for judgments of acquittal since the evidence is insufficient to prove that appellant's conduct actually placed Michael Collins in fear.
We reverse on Point I, but affirm on Points II and III and direct the trial court to enter an adjudication based on the offense of simple assault.
For clarity, we need to discuss the third issue first because it raises a question of whether there was an assault at all, whereas the issue raised in Point I is whether the assault was an aggravated assault. If there was no assault, then, of course, there was no aggravated assault.
An assault is "an intentional unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Section 784.011(a), Florida Statutes (1979). The only aspect of that definition that appellant urges was not supported by the evidence is whether the victim was placed in fear. The transcript establishes that the victim testified that he was not afraid of appellant, but that he was scared when the "gun" was pointed at him. This testimony supports the finding that appellant committed an act which placed the victim in fear. Thus, the trial judge properly denied the motion for judgment of acquittal based on the sufficiency of the evidence of assault.
As to whether the assault was an aggravated assault, Section 784.021, Florida Statutes (1979), provides in pertinent part that an "aggravated assault is an assault with a deadly weapon without intent to kill." The issue presented here is whether the starter gun used by appellant was a deadly weapon. The State's expert witness, a police officer, testified that the instrument *368 was a .22 caliber starter pistol which had two bars in the barrel and on which the barrel was warped such that the instrument could not fire a projectile. The instrument could not be loaded with a real bullet. Furthermore, the officer testified that the instrument could be modified to make it operable, but that modification could only be accomplished by an experienced and knowledgeable person. The testimony revealed that the starter pistol did look just like a regular gun to the ordinary observer.
Based on these facts, we believe that the evidence failed to support the determination that the starter pistol was a deadly weapon. As noted in Goswick v. State, 143 So.2d 817 (Fla. 1962), "It is the nature of the weapon that characterizes the assault as `aggravated.'" (143 So.2d at 820) The standard Jury Instruction on aggravated assault defines a deadly weapon as "any weapon which, in the manner in which it is used or threatened to be used, is likely to produce death or great bodily harm."
This Court was faced with the factual question of whether an unloaded gun was a deadly weapon in Bass v. State, 232 So.2d 25 (Fla. 1st DCA 1970). There, this Court held that a gun is a deadly weapon whether loaded or unloaded. Similarly, the Third District Court of Appeal has held that a gun whether operable or inoperable is a deadly weapon. Warren v. State, 332 So.2d 361 (Fla. 3d DCA 1976).
We think those cases are distinguishable because of the fact that they deal with an instrument which is actually a gun, rather than a starter pistol which even in its loaded and operable state is incapable of firing a projectile.
We are not unaware of Nash v. State, 374 So.2d 1090 (Fla. 4th DCA 1979), wherein, based on the facts gleaned from the dissent, it appears that the court ruled by per curiam affirmed that a conviction of aggravated assault could be had where the assailant used a starter pistol. Although the dissenting Judge, Chief Judge Downey, noting that the pistol had not been adapted so as to fire a projectile and did not contain a projectile, likened the situation to one involving an unloaded gun, citing among other sources Annot., 79 A.L.R.2d 1424 (1961), we think the situation in both Nash and this case is more appropriately likened to one involving a toy or simulated gun. See Annot., 81 A.L.R.3d 1006 (1977).
We note that under Section 790.001, Florida Statutes (1979), a starter pistol is included within the definition of a firearm if it "will, or is designed to, or may readily be converted to, expel a projectile... ." Thus, it would appear to us that whether a particular starter pistol is a deadly weapon would depend on whether it is a firearm, i.e., readily converted to fire a projectile. The facts stated in Chief Judge Downey's dissent in Nash reveal that there was testimony that the starter pistol could be adapted so as to fire a projectile.
In the instant case, the officer testified that the starter pistol could be made operable, but could be done only by an experienced and knowledgeable person. There was no evidence the instrument could readily be converted to expel a projectile. Nor was there evidence of any threat to use the instrument as a bludgeon.
The facts here are more comparable to those in McCray v. State, 358 So.2d 615 (Fla. 1st DCA 1978), where this Court reversed a conviction for robbery with a weapon where the evidence showed that the instrument carried in the course of the robbery was a cigarette lighter which was shaped like a gun. Holding that although the cigarette lighter could be a deadly weapon, depending on its use or threatened use, it was not such when it was merely pointed at the victim as if it were a gun.
Since the question of whether the starter gun was a deadly weapon was a question of fact to be resolved by the trier of fact based on the evidence adduced, the motion to dismiss based on the allegation that there were no material disputed facts and the undisputed facts did not establish a prima facie case was properly denied. However, since the evidence does not support the finding that the instrument used was a deadly weapon, the trial court should *369 have granted the motion for judgment of acquittal as to the aggravated nature of the assault. Accordingly, we reverse the adjudication of delinquency based on aggravated assault with directions that the trial court enter an adjudication of delinquency based on simple assault.
The third and final issue to consider revolves around the question of whether the motions to suppress should have been granted because of the arresting officer's alleged failure to make a reasonable effort to immediately notify appellant's mother of the arrest as required by Section 39.03(3), Florida Statutes (1979). We need not reach the legal intricacies of this issue because appellant's mother was, in fact, notified immediately. The record establishes that the arresting officer took appellant by his house and informed his mother of the arrest on the way to the juvenile detention center from the school. The fact that the detour by the house was for the purpose of obtaining the starter gun and not for the purpose of informing appellant's mother of the arrest does not change the fact that the mother was notified.
AFFIRMED in part and REVERSED in part with directions.
LARRY G. SMITH, J., concurs.
BOOTH, J., dissents with opinion.
BOOTH, Judge, concurring in part, dissenting in part:
I would affirm the judgment below in its entirety. Aggravated assault was charged based on defendant's use of a starter pistol which he pointed at the victim. The gun was inoperable, but the victim was unaware of that fact and testified: "It looked like a.38 to me," and "I felt scared." That is the critical point. The gravamen of any assault is the putting in fear of the victim. The consequences to the victim, innocent bystanders and to the assailant are far more likely to be serious when a deadly weapon is involved. A weapon that is apparently or actually capable in the manner used of causing death or great bodily harm is a "deadly weapon." In Bass v. State, 232 So.2d 25, 27 (Fla. 1st DCA 1980), this court held:
Certainly, when one is confronted by another with a gun and does not know it to be unloaded, the natural reaction is to assume that the gun can be fired and can inflict great bodily harm. In such a situation and under the proper circumstances, it would not be unreasonable for the person assaulted to attempt to repel his assailant by inflicting upon him bodily harm, which attempt might result in the death of the assailant or in the deaths of bystanders in the event that the assailant was not subdued. In such a situation, the possibility of death is not unforeseeable even though the assailant did not loan his gun. This view comports with the general definition of a "deadly weapon" as one likely to produce death or great bodily injury.
In Warren v. State, 332 So.2d 361, 362 (Fla. 3d DCA 1976), the court affirmed the conviction of assault with a deadly weapon where the pistol involved was not shown to have been operable and held:
The pivotal question presented on this appeal of the defendant's conviction is whether or not an inoperable gun pointed at someone is a deadly weapon. We hold that when, as in this case, a pistol is pointed at someone during the course of a robbery, the pistol, whether operable or inoperable, is a deadly weapon within the meaning of § 784.04.
Here, as in Warren, the weapon was inoperable. Inoperability, whether temporary or permanent, is of no consequence where unknown to the victim and forms no basis for distinguishing the Bass and Warren cases under the rationale stated in those cases.[1]
*370 In this case, an expert testified that the gun used was a .22 caliber starter pistol which has a firing pin that strikes and explodes gunpowder in blank cartridges but shoots no projectile. The gun would not fire projectiles because of a bar in the cylinder, but, when the cylinder is in place, the bar was not visible to the person having the gun pointed at him. Further testimony was that, because the barrel is larger than the cylinder, a person having this particular pistol pointed at him would believe that it was a larger handgun than a .22 caliber. Finally, expert testimony was that the gun could be made operable and was a "firearm" within the meaning of Florida Statutes § 790.001(6):
"Firearm" means any weapon (including a starter gun) which will, or is designed to, or may readily be converted to, expel a projectile by the action of an explosive... .
Most recently, in Nash v. State, 374 So.2d 1090 (Fla. 4th DCA 1979), the Fourth District Court upheld a conviction for aggravated assault with a deadly weapon based on the use of a starter pistol, citing this court's opinion in Bass v. State, supra. In Nash, as in the instant case, testimony was that the pistol was capable of being adapted so as to fire a projectile, although it was not so adapted at the time of the commission of the offense. The fact that the weapon can be adapted to fire a projectile indicates its structural similarity to a weapon capable of firing a projectile and substantiates the well-founded fear of the victim.
I dissent from that portion of the majority's opinion which requires the reduction of the offense to simple assault.
NOTES
[1] Cf. McCray v. State, 358 So.2d 615 (Fla. 1st DCA 1978), involving a conviction of robbery "while carrying a weapon," contrary to Florida Statutes § 812.13(2)(b). In that case, the court held that a cigarette lighter "shaped like a gun" did not constitute a "weapon". There is no discussion of similarity of appearance with that of a real weapon or victim's belief that real gun was being used.